STATE of Tennessee, Appellee,

v.

Billy SEXTON, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

June 15, 1983.

Permission to Appeal Denied by Supreme Court Aug. 29, 1983.

Lanny R. Norris, Elizabethton, for appellant.

William M. Leech, Jr., State Atty. Gen. & Reporter, Wayne E. Uhl, Asst. State Atty. Gen., Nashville, David Crockett, Asst. Dist. Atty. Gen., Elizabethton, for appellee.

## OPINION

BYERS, Judge.

The defendant was convicted of assault with the intent to commit murder in the first degree with bodily harm and was sentenced to life imprisonment.

The defendant challenges the sufficiency of the evidence, says the trial court erred when it allowed the state to amend the indictment by changing the date of the offense, says the trial court erred in allowing the victim to show to the jury the hand injuries she sustained as a result of the attack, says the trial court erred in allowing evidence of child support owed to the victim by the defendant, says the trial court erred in allowing the victim to testify concerning "several occasions that Billy has done things to me that I have been very forgiving," and says the verdict is so excessive that it shows jury prejudice and violates the constitutional prohibition against cruel and unusual punishment.

The judgment is affirmed.

The state's evidence shows that on May 21, 1980, at approximately 7:15 a.m., Janet Sexton, after working a graveyard shift at a local factory, was given a ride to a school parking lot by a co-worker. Janet Sexton's car was parked on the lot. After she unlocked the car door, she noticed a dirty footprint in the driver's seat, the contents of her daughter's purse scattered about in the backseat and a strong body odor in the car. She started the car and headed down the highway. Suddenly the backseat folded forward, and the defendant, who was her ex-husband and who had been hiding behind the backseat, came toward her with a knife. He said, "You goddamn bitch, I'm going to kill you." The defendant then attacked the victim with the knife. The victim lost control of the car and hit a telephone pole in an effort to protect herself from the defendant's attack. The defendant continued the attack and stabbed the victim in the chest. The defendant's hand was on the handle of the knife, and the victim grabbed the blade of the knife in an attempt to pull it from her chest. Two men approached the car. The defendant pulled the knife out and fled.

As a result of the attack, Janet Sexton sustained a chest wound, sixteen lacerations on her hands, and a deep cut wound on her ankle. The cuts on her hands resulted in tendon damage to both hands with permanent limitation of use of her hands. Two subsequent operations to repair the damage were unsuccessful, and the amputation of two or more fingers might be necessary in the future.

The defendant testified he hitchhiked from Morristown to the parking lot in Elizabethton to talk to Janet Sexton. He said he got to her car around midnight, crawled into the back of the car and fell asleep while waiting for her. The defendant said he was awakened when he heard women's voices. The victim got into the car, and after driving a short distance, the defendant said he raised up and spoke her name. He testified she was surprised, pulled a knife on him and threatened to cut his throat. They struggled over the knife, and hit a pole. The defendant said he hit the windshield and was dazed briefly. He then got the knife from the victim and left the scene because he did not want to encounter the police.

The defendant's challenge to the sufficiency of the evidence is without merit. When viewing the evidence in the light most favorable to the state, as we are required to do on appeal, we find the essential elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Rule 13(e), T.R.A.P. The de-

fendant's actions and intent were clearly shown by the evidence that he lay in wait several hours for the victim, told her he was going to kill her and then viciously attacked her with a deadly weapon causing her to be seriously and permanently injured.

■ The defendant argues that the trial court erred in allowing the state, before the jury was sworn and over the defendant's objection, to amend the indictment to show that the offense occurred on May 21, 1980, and not on May 21, 1981, as alleged in the original indictment. The defendant contends that the date of the offense was essential for the offense to fall under the "Class X Felony Act of 1979" and that the amendment was, therefore, more than just a matter of form. We disagree with the defendant's contention.

Rule 7(b), T.R.Cr.P. provides:

An indictment, presentment or information may be amended in all cases with the consent of the defendant. If no additional or different offense is thereby charged and no substantial rights of the defendant are thereby prejudiced, the court may permit an amendment without the defendant's consent before jeopardy attaches.

In *State v. Durham,* 614 S.W.2d 815 (Tenn.Cr.App.1981), this Court held that the trial court acted properly under Rule 7(b), T.R.Cr.P., in allowing an amendment before jeopardy attached for the purpose of correcting the date of the alleged offense.

In this case a different offense is not charged nor are substantial rights of the defendant affected by the amendment. For an offense to fall under the "Class X Felony Act of 1979," the offense must have been committed on or after September 1, 1979. T.C.A. § 39-1-704. The date alleged in the original indictment and the date alleged in the amendment are both after September 1, 1979. Therefore, the amendment did not affect the class x classification of the charged offense.

■ We find the trial judge did not abuse his discretion by allowing the victim in this case to display her injuries to the jury. The location, number and extent of her injuries were relevant to the issue of self-defense raised by the defendant. *See Wilson v. State,* 574 S.W.2d 52 (Tenn.Cr. App.1978). The victim's injuries were also relevant on the issue of whether the assault resulted in bodily injury. T.C.A. § 39-2-103(b).

■ The defendant argues that the state improperly opened the issue of the defendant's character in its case in chief by eliciting testimony from the victim about child support owed by the defendant. The first mention of back child support occurred during the defendant's cross-examination of the victim. Defense counsel questioned the victim regarding the substance of a conversation which took place at a meeting of the defendant and his parents with the victim after the offense occurred. In response to defense counsel's question, the victim said, "So I went down there and they told me that Billy would pay my back child support and would pay my outstanding medical expenses if I would not go hard on him at trial." On redirect examination the victim testified regarding the amount of child support owed and the offer from the defendant's parents to pay the back child support if the victim would refuse to testify against the defendant.

We find that the offer to pay back child support in exchange for the victim's agreement not to testify against the defendant constitutes an attempt to conceal evidence and is relevant as a circumstance from which guilt may be inferred. *See Sotka v. State,* 503 S.W.2d 212 (Tenn.Cr.App.1972). Therefore, the trial court did not err in allowing this testimony.

■ The defendant argues that the trial court erred in allowing the victim on redirect examination to testify, "I want to say that I know that there have been several occasions that Billy has done things to me that I have been very forgiving." The defendant contends this statement is immaterial to the crime charged and is an improper attack on the defendant's character. We find no merit to this issue.

During defense counsel's cross-examination of the victim, much was made of the victim's brief reconciliation with the defendant after the attack. Defense counsel tried to establish through his questioning of the victim that she had other motives for pursuing the prosecution, such as receipt of damages from the victim's compensation fund. On redirect examination the victim in an attempt to explain her actions made the statement in question. After the trial court overruled the defendant's objection to the statement, she further explained:

> Well, I always forgive him. He always comes back and says that he's changed, and I always forgave him and took him back, even though times he would be gone for months with other women and I would still let him come back, because I would believe in him and trust in him and hope that he would change. And time and time again he proved that—that he didn't. That he wasn't changed.

We find that defense counsel put this issue before the jury by his questions to the victim regarding her conduct after the attack and her motives for continuing the prosecution. The state was entitled on redirect examination to rebut the implications raised by the defendant during cross-examination.

■ We disagree with the defendant's contention that the verdict of the jury is so excessive as to evidence prejudice, bias and caprice on the part of the jury. The defendant's life sentence falls within the statutory range prescribed in T.C.A. § 39–2–103, and therefore, it does not show jury bias. *State v. Taylor,* 628 S.W.2d 42 (Tenn. Cr.App.1981).

The defendant further complains that the life sentence is so disproportionate to the severity of the crime that it violates the Tennessee and United States constitutional provisions against cruel and unusual punishment. Based on the facts in this case, we do not find the sentence to be disproportionate to the offense committed. The defendant attempted to take his ex-wife's life by violently attacking her with a knife. As a result of the defendant's attack, the victim's hands are permanently crippled and the amputation of one or two of her fingers may be necessary in the future. The defendant's life sentence in this case is not cruel and unusual punishment.

WALKER, P.J., and DAUGHTREY, J., concur.