IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

APRIL 1996 SESSION

FILED

June 6, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 01-C-01-9505-CR-00146 |
| APPELLEE, | ) | |
| | ) | Davidson County |
| v. | ) | |
| | ) | Ann Lacy Johns, Judge |
| JOHN CLAUDE WELLS, III, | ) | |
| | ) | (Aggravated Sexual Battery) |
| APPELLANT. | ) | |

FOR THE APPELLANT:

Jeffrey A. DeVasher
Senior Asst. Public Defender
1202 Stahlman Building
Nashville, TN 37201-5066
(On Appeal)

Ross E. Alderman
Deputy Public Defender
1202 Stahlman Building
Nashville, TN 37201-5066
(At Trial)

Jefferson Dorsey
Assistant Public Defender
1202 Stahlman Building
Nashville, TN 37201-5066
(At Trial)

OF COUNSEL:
Karl Dean
District Public Defender
1202 Stahlman Building
Nashville, TN 37201-5066

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
450 James Robertson Parkway
Nashville, TN 37243-0497

Charlotte H. Rappuhn
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

Victor S. Johnson, III
District Attorney General
222 Second Avenue North, Suite 500
Nashville, TN 37201-1649

Lila J. Statom
Assistant District Attorney General
222 Second Avenue North, Suite 500
Nashville, TN 37201-1649

Charles Carpenter
Assistant District Attorney General
222 Second Avenue North, Suite 500
Nashville, TN 37201-1649

OPINION FILED: _____

AFFIRMED

Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, John Claude Wells, III, (defendant), was convicted of nine (9) counts of aggravated sexual battery, a Class B felony, by a jury of his peers.[1] The trial court, finding the defendant to be a standard offender, imposed a Range I sentence consisting of confinement for ten (10) years in the Department of Correction in each of the nine counts. The sentences must be served consecutively. The effective sentence imposed was confinement for ninety (90) years in the Department of Correction.

The defendant presents six issues for review. He contends the counts of the indictment of which he stands convicted are invalid and void. He also contends the trial court committed error of prejudicial dimensions by (a) granting the state's motion to amend six counts of the indictment, (b) allowing a witness to describe the conduct of one of the victims, (c) allowing the mother of one of the victims to describe her child's psychological treatment and hospitalization, (d) admitting into evidence three books found in the defendant's apartment in Austin, Texas, and (e) imposing excessive sentences. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this Court the judgment of the trial court should be affirmed.

## GENERAL BACKGROUND

The defendant moved to Nashville in 1987. He subsequently leased an apartment in the Turtle Creek apartment complex. Eventually, he leased a home located on Tobylynn Court in Nashville. In December of 1991, the defendant moved to Austin, Texas.

A young victim, J.T.K.,[2] decided to earn spending money during the summer of 1989. He went from apartment to apartment in the Turtle Creek complex offering to remove trash bags from a person's apartment to a garbage container for fifty cents per

---

[1]The jury acquitted the defendant of two counts of aggravated sexual battery and one count of attempted aggravated rape.

[2]Initials, rather than the names of the victims, are used to protect the privacy of minors who have been sexually abused.

bag. The defendant's apartment was one of the apartments approached by J.T.K. The defendant agreed to use the minor's services. The minor testified the defendant told him he did not have any trash, but he would give him $5.00 to wash his dishes. The defendant testified he employed the minor to remove his trash. A close friendship developed between J.T.K. and the defendant.

J.T.K. began spending weekends at the defendant's apartment. He introduced other young boys to the defendant. Two other victims, D.D.N. and R.A.V., were two of the young boys J.T.K. introduced to the defendant. These two victims also began spending weekends at the defendant's apartment with the other young boys the defendant had met.

The defendant provided video games, board games, and rented movies for the boys on the weekends. He took the boys to a movie theater on occasion. In addition, he took several of the boys to Opryland, Kings Island in Ohio, Gatlinburg, and Mammoth Cave in Kentucky. He also took the boys to the zoo, a skateboard park, and other parks in Nashville. The defendant stated he took some of the boys fishing at Percy Priest Park near Nashville. He also took the boys on camping trips. The defendant took some of the boys to New Orleans for the Sugar Bowl. He also took the boys to fast food restaurants. The defendant paid for all of the expenses incurred for the food and the trips.

J.T.K. took Taekwondo lessons. The defendant paid for these lessons. He loaned money to R.A.V.'s mother. He gave her a motor vehicle. He also paid six months rent in advance when she moved to a duplex. He gave the boys nice presents on Christmas and their birthdays.

Most of the boys were from families without fathers in the household. Some of these boys had stepfathers whom they did not like. The defendant was a father-figure to these young boys.

On April 22, 1991, D.D.N. told a teacher he had been sexually abused by the defendant. The police were called. D.D.N gave the police a statement implicating the defendant. An investigation ensued. Detective Bruce Amos of the Metropolitan Police Department interviewed the defendant on May 17, 1991. Between July 8, 1991 and November 22, 1991, he interviewed the young boys who spent time at the defendant's apartment. The defendant made entries in a desk calendar of the dates of the interviews.

3

He admitted he left Nashville shortly after Thanksgiving in 1991.

When the defendant arrived in Texas, he took steps to change his identity from John Claude Wells, III, to Duane Wells. He gave his new employer and others a false social security number. The defendant was subsequently sent to Philadelphia, Pennsylvania to install wireless cable television units. While in Philadelphia, he was stopped for a traffic offense. He gave the officer his Tennessee driver's license which contained his correct name. The officer apparently ran an NCIC check. The check revealed he was wanted in Tennessee for aggravated sexual battery. He was subsequently extradited to Tennessee. He remained in jail until the trial.

### COUNTS ONE THROUGH SIX

Counts one through six involved the victim, D.D.N. The victim was under the age of thirteen years when these incidents occurred. All of these incidents occurred before April 22, 1991.

D.D.N, one of the victims, lived in the same apartment complex as the defendant. This victim was introduced to the defendant by J.T.K. at a skateboard park. Eventually, D.D.N. began spending the night at the defendant's apartment each weekend. The defendant took D.D.N. to Gatlinburg alone. The defendant attempted to engage in sexual activity with D.D.N. during this trip. D.D.N. refused the defendant's advances. The defendant then pressured D.D.N. by acting as if he were mad at D.D.N. The sexual abuse began after D.D.N. and the defendant returned from Gatlinburg.

The incident which led to the defendant's conviction in Count I occurred in the defendant's bedroom. The defendant removed D.D.N.'s undergarments, got on top of D.D.N., and moved up and down on D.D.N. as he rubbed his reproductive organ between the victim's legs. The defendant ejaculated.

The incident which led to the defendant's conviction in Count II also occurred in the defendant's bedroom. D.D.N. and the defendant were in the bed with the door closed. They were lying side by side. The defendant touched his reproductive organ to the victim's reproductive organ. Thereafter, the defendant got on top of the victim again placed his

4

reproductive organ between D.D.N.'s legs as he did on the first occasion.

The incident which led to the defendant's conviction in Count III occurred in the defendant's bed. D.D.N. remembered it occurred the day before one of the defendant's cats was found dead in the apartment. Again, the defendant placed his reproductive organ between D.D.N.'s legs and rubbed against the victim's legs.

The incident which led to the defendant's conviction in Count IV occurred in the defendant's bed at his residence on Tobylynn Court. The defendant touched D.D.N.'s reproductive organ with his hand before getting on top of the victim and rubbing his reproductive organ between the victim's legs.

The incident which led to the defendant's conviction in Count V of the indictment occurred at the defendant's house. The defendant touched D.D.N.'s buttock with his reproductive organ. The defendant then attempted to penetrate D.D.N. anally. D.D.N. refused to permit the defendant to penetrate him.

The incident which led to the defendant's conviction in Count VI occurred at the defendant's house. According to D.D.N., the defendant lay on D.D.N.'s back and "humped" him between the legs as on prior occasions.

## COUNTS NINE AND TEN

Counts IX and X involve the victim, R.A.V. He was under the age of thirteen years when these two incidents occurred. Both incidents occurred before September 17, 1991.

The incident which led to the defendant's conviction in Count IX occurred in the defendant's bedroom at his Turtle Creek apartment. It was the first night R.A.V. spent the night at the defendant's apartment. He slept in the same bed with the defendant while several other boys slept in the living room of the apartment. When R.A.V. awoke the next morning, the defendant had his hands in the victim's underwear. He was touching and squeezing his reproductive organ.

The incident which led to the defendant's conviction in Count X also occurred in the defendant's bedroom at the Turtle Creek apartment. Again, the victim slept with the defendant. When the victim awoke the next morning, the defendant had his hands in the

5

victim's underwear. The defendant was touching and squeezing the victim's reproductive organ.

**COUNT ELEVEN**

Count XI involves the victim, J.T.K. He was under the age of thirteen years when these two incidents occurred. This incident occurred before November 22, 1991.

The victim was having trouble urinating. The defendant told the victim he had a "blockage." The victim went into the defendant's bedroom at the Turtle Creek apartment. While the other boys were in the living room of the apartment, the defendant pulled J.T.K.'s pants to his knees, and the defendant removed all of his clothing. The defendant masturbated the victim from ten to fifteen minutes.

**I.**

While this case was under advisement, the defendant filed a letter supplementing the authorities cited in his brief. It is his contention all nine counts of the indictment of which he stands convicted are void; and he asks this Court to reverse and dismiss the prosecutions against him.

**A.**

The defendant relies upon this Court's opinion in State v. Roger Dale Hill, Sr., Wayne County No. 01-C-01-9508-CC-00267 (Tenn. Crim. App., Nashville, June 20, 1996), per. app. granted (Tenn. January 6, 1997). In Hill, this Court held the failure to allege the mens rea or culpable mental state in a prosecution for aggravated rape[3] rendered the indictment facially void and dismissed the prosecution against Hill. Later, this Court held the failure to allege the culpable mental state in an indictment charging the rape of a child did not invalidate the indictment. State v. James Dison, Sevier County No. 03-C-01-9602-CC-00051 (Tenn. Crim. App., Knoxville, January 31, 1997). Finally, this Court has held the

---

[3]In Hill, the defendant was convicted of the lesser included offense of aggravated sexual battery.

6

factual allegations contained in an indictment may be sufficient to establish the culpable mental state when the indictment does not allege the specific culpable mental state. State v. Billy Joe Smith, Unicoi County No. 03-C-01-9508-CC-00250 (Tenn. Crim. App., Knoxville, February 11, 1997). See also State v. John Haws Burrell, Anderson County No. 03-C-01-9404-CR-00157 (Tenn. Crim. App., Knoxville, February 11, 1997).

**B.**

All nine counts in question allege the offense of aggravated sexual battery. The counts allege in part the defendant "did engage in unlawful sexual contact with [the victim], a child less than thirteen (13) years of age."

The statute proscribing aggravated sexual battery, Tenn. Code Ann. § 39-13-504, states:

> (a) Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:
>
> * * * *
>
> (4) The victim is less than thirteen (13) years of age.

The phrase "sexual contact," as used in the statute, is defined in Tenn. Code Ann. § 39-13-501 in the following manner:

> (6) "Sexual contact" includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

As can be seen, the statute proscribing the offense of aggravated sexual battery does not contain a culpable mental state. The statute refers to the conduct as "unlawful."

**C.**

While the description of an offense contained in an indictment "must be sufficient

7

in distinctness, certainty, and precision to enable the accused to know what offense he is charged with and to understand the special nature of the charge he is called to answer," Church v. State, 206 Tenn. 336, 358, 333 S.W.2d 799, 809 (1960), it is not necessary "to amplify and encumber the charge by circumstantial detail and minute description." Jordan v. State, 156 Tenn. 509, 514, 3 S.W.2d 159, 160 (1928)(citations omitted). As a general rule, it is sufficient to state the offense charged in the words of the statute, State v. Overton, 193 Tenn. 171, 174, 245 S.W.2d 188, 189 (1951); Stanfield v. State, 181 Tenn. 428, 432, 181 S.W.2d 617, 618 (1944); Jordan, 156 Tenn. at 514, 3 S.W.2d at 160; State v. Tate, 912 S.W.2d 785, 789 (Tenn. Crim. App. 1995), or words which are the equivalent to the words contained in the statute. Coke v. State, 208 Tenn. 248, 250-51, 345 S.W.2d 673, 674 (1961); Starks v. State, 66 Tenn. 64, 66 (1872).

The Tennessee Criminal Sentencing Reform Act of 1989 does not require the culpable mental state to be alleged in an indictment. However, the State of Tennessee is required to prove the culpable mental state required to commit the offense beyond a reasonable doubt.

In this case, the definition of "sexual contact" requires the touching to be "intentional." The use of the terms "sexual contact" in the indictment is the same as if the definition is set forth in full. Thus, the culpable mental state is contained in the indictment.

In summary, the nine counts of the indictment are valid. The allegations contained in these counts are sufficient to apprise the defendant of the offenses he was required to defend, the trial court knew the offenses to which it would apply the judgments if the defendant was convicted, and the defendant knows with accuracy to what extent he can plead former acquittal or former conviction in a subsequent prosecution for the same offenses. Moreover, the defendant does not allege he was prejudiced in his defense, and the record does not indicate the defendant was in fact prejudiced in presenting his defense.

This issue is without merit.


## II.


The defendant next contends the trial court committed error of prejudicial

8

dimensions by allowing the State of Tennessee to amend six counts of the indictment. All of the counts pertained to the victim, D.D.N. The amendments were made on the first day of trial before voir dire examination.

The first three counts of the indictment alleged the unlawful contact upon D.D.N., a child less than thirteen (13) years old, in 1990. Counts IV through VI alleged the unlawful sexual contact upon D.D.N., a child less than thirteen (13) years old, in 1991. The trial court permitted the state to amend these counts of the indictment to allege the unlawful sexual contact occurred "on a day before April 22, 1991."

In permitting the state's motion to amend the indictment, the trial court found the defendant was not prejudiced by the amendments to the six counts of the indictment. The court said: "In light of the fact that the requested amendment is consistent with the information in the Bill of Particulars, and there is no surprise and no prejudice to the defendant, no deviation from what they have previously been advised. . . ."

The defendant argues in this Court a substantial right was affected because the amendment broadened the time frame in which the acts occurred and as a result forced the defense to defend against charges not alleged in the indictment. He further argues the amendment to the indictment was broader than the state's response to the bill of particulars; and the election made at the close of the state's case in chief was inconsistent with the bill of particulars. As a result, the defendant contends he was denied his right to due process of law.

An indictment "may be amended in all cases with the consent of the defendant." Tenn. R. Crim. P. 7(b). If the defendant does not consent to the amendment, the indictment may be amended if: (a) no additional or different offense is charged, (b) no substantial right of the defendant is prejudiced, and (c) the amendment is sought and permitted before jeopardy attaches. See State v. Badgett, 693 S.W.2d 917, 919 (Tenn. Crim. App.), per. app. denied (Tenn. 1985); State v. Sexton, 656 S.W.2d 898, 900 (Tenn. Crim. App.), per. app. denied (Tenn. 1983); State v. Meadows, 635 S.W.2d 400, 405 (Tenn. Crim. App. 1982); State v. Durham, 614 S.W.2d 815, 818 (Tenn. Crim. App.), per. app. denied (Tenn. 1981); State v. Beal, 614 S.W.2d 77, 80 (Tenn. Crim. App.), per. app. denied (Tenn. 1981).

9

The question of whether an amendment should be permitted rests within the sound discretion of the trial court. See Tenn. R. Crim. P. 7(b); State v. Kirkland, 696 S.W.2d 544, 545 (Tenn. Crim. App. 1985). This Court has held in the past a trial court did not abuse its discretion in permitting the state to amend an indictment to change the date contained in the indictment. Badgett, 693 S.W.2d at 919; Sexton, 656 S.W.2d at 900; Durham, 614 S.W.2d at 818. In this case, the trial court did not abuse its discretion by granting the state's motion to amend indictments I through VI of the indictment. No additional or different offense was charged, the substantial rights of the defendant were not impaired, and the motion to amend was made prior to the time jeopardy attached. Furthermore, the defendant was not prejudiced by the amending of the indictment.

This issue is without merit.

### III.

The defendant next contends the trial court committed error of prejudicial dimensions by allowing D.D.N.'s teacher to describe his conduct at school. He argues the evidence was not relevant to any issue in the case, and if relevant, the prejudicial effect far outweighed the probative value of the evidence. The defendant further argues the confusing and misleading nature of the evidence suggested to the jury D.D.N. suffered injuries consistent with a victim of sexual abuse. The conduct led to an interview with a police officer which revealed the sexual abuse he sustained at the hands of the defendant.

The trial court ruled the teacher could describe the conduct of D.D.N. which she observed. Moreover, there was not an effort to qualify the witness as an expert. However, the court ruled the witness could not offer an opinion or conclusion as to why D.D.N. was engaged in the conduct hereinafter set forth.

D.D.N. attended the Murrell School, a school for children with behavioral difficulties. He entered the school in March of 1990. Following the summer break, the teacher noticed that D.D.N.'s conduct had deteriorated. D.D.N. acted aggressively and was self-mutilating. He often sought refuge where he could do his school work alone. On occasion he became so violent he had to be placed in a "quiet room" and physically restrained by an adult until

10

his conduct subsided and he could rejoin the school population. He threw books, picked up chairs, struck his fellow students, broke pencils, ripped papers, left the classroom, left the school buildings, climbed to the top of open stairwells and stood peering downward, and stacked chairs on tables and stood on top of the chairs.

The appellate courts have held testimony detailing behavioral dynamics of child abuse cases is inadmissible. State v. Bolin, 922 S.W.2d 870, 873 (Tenn. 1996); State v. Ballard, 855 S.W.2d 557, 561-63 (Tenn. 1993); State v. Dickerson, 789 S.W.2d 566, 567 (Tenn. Crim. App. 1990); State v. Myers, 764 S.W.2d 214, 217 (Tenn. Crim. App. 1988), per. app. denied (Tenn. 1988). This Court has held that testimony indicating a child's pattern of behavior is consistent with the behavior of sexually abused children is inadmissible. State v. Schimpf, 782 S.W.2d 186, 193-94 (Tenn. Crim. App. 1989), per. app. denied (Tenn. 1990). The Schimpf court noted that jurors can determine whether unlawful sexual activity has occurred without the assistance of psychological testimony. Schimpf, 782 S.W.2d at 194. Expert testimony that children exhibit symptoms of post-traumatic stress syndrome should not be offered to confirm the occurrence of sexual abuse. This type of evidence "invades the province of the jury to decide on the credibility of witnesses." Ballard, 855 S.W.2d at 561-62. This Court said in State v. Anderson, 880 S.W.2d 720, 730 (Tenn. Crim. App.), per. app. denied (Tenn. 1994), "child sex abuse may not be proven by evidence that the victim exhibited residual characteristics or behavioral traits similar to other victims of such abuse."

In Bolin, 922 S.W.2d at 873-74, the Tennessee Supreme Court addressed a situation in which the witness, a social worker, was not offered as an expert witness but testified to generalizations regarding the victims of sexual abuse. In support of its argument that the testimony was properly admitted, the state argued that the testimony was not "opinion" evidence because it was based upon the witness's own observation of the child victims as a social worker. The Supreme Court disagreed. "[A]lthough the social worker's testimony may have been based on factual observations, it was not presented that way: the testimony contains no references to any such observations, and was stated in a general and abstract manner. Therefore, it must be classified as 'opinion' evidence." Bolin, 922 S.W.2d at 874. While the social worker was not formerly qualified as an expert

witness, the witness displayed "specialized knowledge" intended to "substantially assist the trier of fact to understand the evidence or to determine a fact in issue." The court found that the social worker's testimony violated <u>Ballard</u>. <u>Bolin</u>, 922 S.W.2d at 874.

This case is distinguishable upon the facts from the aforementioned cases. Pounds was the victim's teacher from March 1990 when he entered the school until the spring of 1992. She testified how the child acted at the school and how this prompted the investigation into the defendant. The witness did not testify as to generalizations. Instead, she testified to specific incidents.

The witness was not offered as an expert. More importantly, her testimony was not offered to show that the child's actions conformed with the type of behavior expected from a victim of child abuse. She did not testify as to how child abuse victims act. Her testimony was relevant to show jurors what prompted the investigation into the defendant's possible sexual abuse of D.D.N. Her testimony was relevant to show how the child acted during the period of abuse. As previously stated, the witness was prohibited from offering opinions or conclusions that the child's behavior was indicative of abuse.

This issue is without merit.

## IV.

The defendant also contends the trial court committed error of prejudicial dimensions by permitting the mother of the victim D.D.N. to testify concerning her son's conduct towards his family and his placement in several treatment facilities. The defendant argues the testimony given by this witness was not relevant to the determination of his guilt. Assuming the testimony is relevant, the defendant contends the unfair prejudicial effect far outweighs its probative value.

The trial court ruled the witness could testify regarding D.D.N.'s behavior within the family setting and the action taken regarding this behavior. The court specifically ruled the witness could not characterize the treatment received by D.D.N. as counseling for a sexually abused child.

12

The witness described her son's aggressive behavior towards his family and to himself. Her son had met the defendant in the summer of 1989. The behavioral problems began in the summer of 1990. She related that her son was hospitalized in late 1990 by the Murrell School for an evaluation in what was described as an emergency situation. He was hospitalized twice in 1991. The witness described the treatment centers as mental health facilities. In 1992, D.D.N. spent nine months at a longer term treatment facility and then went into a therapeutic foster home for several months. Afterward, he entered a wilderness program before he was able to return to his family. His mother said her child was working through mental and emotional problems.

The defendant argues the reasoning of State v. Holt, 801 S.W.2d 518, 520 (Tenn. Crim. App. 1990), cert. denied, 507 U.S. 964, 113 S.Ct. 1396, 122 L.Ed.2d 769 (1993) controls. In Holt, the trial court allowed testimony that the victim had undergone counseling at a rape and sexual abuse center. This Court said, "[w]e can identify no issue to which the nature or extent of counseling can be fairly connected. Thus, we agree with the defendant that this testimony was without probative value and should have been excluded." Holt, 801 S.W.2d at 520. The Holt court noted that because of the convicting evidence, the error was harmless.

The defendant asks this Court to adopt the reasoning of Holt in this case. He argues the evidence suggested to the jury that D.D.N. had suffered psychological injury consistent with being a victim of sexual abuse. Expert testimony that a child exhibits symptoms consistent with those symptoms exhibited by a child who has been sexually abused is inadmissible. Schimpf, 782 S.W.2d at 189-95; Dickerson, 789 S.W.2d at 567-68. He also argues the victim's mother was not an expert, but her testimony was designed to allow jurors to draw that inference.

As the state argues, this case is distinguishable from the situation in Holt. Here, the mother's testimony was that D.D.N. was placed in various programs as a result of his acting out -- which occurred before the allegations against the defendant surfaced. In Holt, the counseling began after the accusations arose and the counselor was identified as being from the Vanderbilt Rape and Sexual Abuse Center, an agency name that necessarily implies that the victim was sexually abused. Here, the mother was prohibited

13

by the trial court from discussing the nature of the treatment.

The mother's testimony was relevant because it told the jury of problems the victim was having at the same time the abuse would have been occurring unbeknownst to her. In State v. Robert W. Seffens, Davidson County No. 01-C-01-9107-CR-00190 (Tenn. Crim. App., Nashville, April 16, 1992), per. app. denied (Tenn. 1992), this Court said when a defendant denied having sexual contact with the victim testimony regarding the victim's fears of the defendant was relevant as to whether the victim was truthful about the allegations. "Any evidence which substantiates the credibility of a prosecution witness on the question of guilt is relevant and material. . . .  This is particularly true when the testimony tended to support the victim's testimony that the incident occurred."  See also State v. McPherson, 882 S.W.2d 365, 372 (Tenn. Crim. App.), per. app. denied (Tenn. 1994)(testimony substantiating the credibility of victim was admissible especially in light of the defense's attack on the victim's credibility).  In this case, the defendant denied he sexually abused the children, including D.D.N.

This issue is without merit.

**V.**

The defendant contends the trial court committed error of prejudicial dimensions by permitting the State of Tennessee to introduce three books:  Stephen D. Grubman-Black, Broken Boys/Mending Men: Recovery from Childhood Sexual Abuse (1990), Robert Hemfelt and Paul Warren, Kids Who Carry Our Pain:  Breaking the Cycle of Codependency for the Next Generation (1990), and James Dobson and Gary L. Bauer, Children at Risk:  The Battle for the Hearts and Minds of Our Kids (1990).  These books were seized by Texas authorities when the officers executed a search warrant at the defendant's apartment in Austin, Texas.  The defendant left Tennessee and moved to Texas after the allegations of sexually abusing the minor children surfaced.

The state argued that the books were relevant because the defendant knew he was under investigation and began preparing a defense. The defendant was becoming familiar with children and their problems.  The trial court agreed that the books were relevant.

14

The defendant argues that the books were irrelevant and should not have been admitted under Tenn. R. Evid. 401. Further, even if the books were relevant, any relevancy was substantially outweighed by the danger of unfair prejudice under Tenn. R. Evid. 403. Additionally, the books should also have been excluded under Tenn. R. Evid. 404(a) which prohibits the use of character evidence to prove an accused's actions conformed with the trait.

The defendant cites State v. Tizard, 897 S.W.2d 732 (Tenn. Crim. App. 1994) where this Court held it was reversible error to admit testimony describing a sexually explicit book and videotapes of homosexual activity found in the defendant's possession and testimony that the defendant's roommates were bisexuals. This Court held in Tizard that the testimony led jurors to make inferences about the defendant's character, Tizard, 897 S.W.2d at 744. There was a substantial risk the jury relied upon this propensity evidence regarding homosexuality to decide the issue of guilt. Tizard, 897 S.W.2d at 745.

> [w]e do not tolerate the use of evidence merely showing a propensity or character trait in order to prove that an accused acted in conformity with the propensity or trait so as to commit a given offense or possessed the particular criminal intent which is required for that offense. Because we view the general inference of homosexuality to relate to propensity as used in this case, we conclude that the trial court erred by admitting into evidence the booklet, videotapes and the defendant's statement regarding his roommates.

Tizard, 897 S.W.2d at 744-45.

The defendant argues Tizard controls here. Introducing the three books "merely show[ed] a propensity or character trait in order to prove that [the] accused acted in conformity with the propensity or trait so as to commit a given offense or possessed the particular criminal intent which is required for that offense." State v. Tizard, 897 S.W.2d at 744-45. The evidence should have been excluded.

Tennessee Rule of Evidence 401 provides:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The books in this case published in 1990 established the defendant had an interest in the subject of child sexual abuse. It is not clear from the evidence when the books were purchased; thus, it is not clear if this interest arose after the allegations were made in April

1991 or before. At trial, a Texas detective testified the books were among many things taken from the defendant's apartment. The other items included a Christmas card to one of the victims advising him of reservations for the Sugar Bowl, travel information to the Sugar Bowl, a ticket stub from the Sugar Bowl on January 1, 1991, a photograph of a boy, a photo album and numerous photos, a passport and identification for John Wells and Duane Wells, an entry visa to Australia, a daily planner for 1991, a letter regarding opening a checking account in Australia, tapes and transcripts of his interview with Detective Amos, and the three books.

The defendant testified he recognized two of the books, but did not remember the third. One of the books he bought in Brentwood outside of Nashville. He said the books were from his collection of more than 200 books that covered a wide range of topics.

This Court finds the introduction of the three books was improper because the evidence was not relevant. There was no indication the defendant counseled the victims from information gained from the books or that the defendant possessed the books before the allegations arose. Many defendants prepare for their defense; that does not make everything they do relevant to the issue of guilt or innocence.

The admission of this evidence was also error because the evidence amounted to improper character evidence. The evidence was improper under Tenn. R. Evid. 404(a)(1) and Tenn. R. Evid. 404(b). The fact that Wells possessed the books was akin to "other acts" evidence that should be disallowed if it is offered to show action merely conforms "with a character trait." Tenn. R. Evid. 404(b)(2).

Tenn. Rule Evid. 404 provides:

> (a) Character Evidence Generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity with the character or trait on a particular occasion, except . . .

None of the exceptions apply. Tenn. R. Evid. 404(b) provides:

> (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
> (1) The court upon request must hold a hearing outside the jury's presence;
> (2) The court must determine that a material issue exists other

16

than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

"For other purposes" includes evidence being admitted as being relevant to such issues on trial as motive, intent, absence of mistake or accident if that is a defense, and rarely, the existence of a larger continuing plan or scheme or conspiracy. State v. Rickman, 876 S.W.2d 824, 827 (Tenn. 1994)(citing Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980)).

Admitting evidence that he possessed books on child abuse ran the risk of establishing the defendant had a propensity or disposition to commit a such crime. Thus the alleged conduct would be conduct conforming with his character trait evidenced by possession of the books. This is prohibited by Rule 404(a); Rule 404(b) and Rule 404(b)(2). See Rickman, 876 S.W.2d at 827-28; State v. Ron Puglisi, Sumner County No. 01-C-01-9205-CC-00166 (Tenn. Crim. App., Nashville, July 21, 1994).

This Court must now determine if the introduction of these three books was reversible error. Tenn. R. App. P. 36(b). In a trial in which the transcript was over 600 pages, the evidence regarding the books came up only twice -- once when the detective testified to finding the books and again, when the defendant described the books as just a few of his collection which covered many interests. These books, which were described as "case books" or clinical in nature, were not pornographic; nor were they highly inflammatory or prejudicial. The state only offered them into evidence.[4] The defendant only offered the explanation that he had books on a wide variety of topics. Given the minimal attention this evidence was given and the overwhelming evidence of guilt presented by the five victims, this Court finds the error was harmless.

**VI.**

As his final issue, the defendant complains the court erred in sentencing the

---

[4]The record did not include a transcript of the attorneys' closing arguments. The Court does not know whether the books were mentioned in closing.

defendant to ten (10) years for each count and erred in imposing consecutive sentences.

When an accused challenges the length and manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this Court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination is based upon the witnesses' demeanor and appearance.

In conducting a de novo review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code. Ann. §§ 40-35-103 and -210. State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

When the accused is the appellant, the accused has the burden of establishing that the sentence imposed by the trial court was erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311.

The defendant was a Range One standard offender qualifying for a sentence between eight (8) and twelve (12) years for aggravated sexual battery, a class B felony. The trial court found the evidence established four enhancement factors and increased the defendant's punishment within the appropriate range to ten (10) year sentences. The enhancement factors found by the trial court were: (a) a previous history of criminal

18

behavior, Tenn. Code Ann. § 40-35-114(1); (b) the personal injuries inflicted upon the victim were particularly great, Tenn. Code Ann. § 40-35-114(6); (c) the offense was done for the defendant's personal gratification, pleasure or excitement, Tenn. Code Ann. § 40-35-114(7); and (d) the defendant abused a position of private trust, Tenn. Code Ann. § 40-35-114(15). The judge found no mitigating factors. The trial court then made the 10-year sentences consecutive pursuant to Tenn. Code Ann. § 40-35-115(b)(5). The effective sentence was 90 years.

The defendant argues the trial court erred (a) in applying the enhancing factors (b) in refusing to apply mitigating factors, and (c) in imposing consecutive sentences.

## A.

The trial court found that the evidence established four enhancement factors: (a) the defendant had a previous history of criminal behavior, Tenn. Code Ann. § 40-35-114(1); (b) the personal injuries inflicted upon the victim were particularly great, Tenn. Code Ann. § 40-35-114(6); (c) the offense was done for the defendant's personal gratification, pleasure or excitement, Tenn. Code Ann. § 40-35-114(7), and (d) the defendant abused a position of private trust, Tenn. Code Ann. § 40-35-114(15). This Court finds the evidence supports some of the enhancing factors and others not considered by the trial court. The trial court properly used factors (1) and (15) for all three victims and factor (6)(as to counts I-VI only). Additionally the trial court could have used factor (4) regarding vulnerability of victim D.D.N.

## (1)

The defendant contends that enhancing the sentence because the victims sustained "particularly great" injuries was in error. He argues there was no physical injury in this case and the state failed to establish that any emotional and psychological injuries were "particularly great" as required.

The term "personal injury" as used in enhancement factor (6) is broad enough to embrace the emotional injuries and psychological scarring sustained by the victim of a

19

sexual offense. State v. Melvin, 913 S.W.2d 195, 203 (Tenn. Crim. App.), per. app. denied (Tenn. 1995); State v. Smith, 891 S.W.2d 922, 930 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Chad Parker, Rutherford County No. 01-C-01-9301-CC-00040 (Tenn. Crim. App., Nashville, September 16, 1993); State v. Steven K. Sterna, Davidson County No. 01-C-01-9007-CR-00163 (Tenn. Crim. App., Nashville, July 24, 1991), per. app. denied (Tenn. 1991). Before this factor may be used to enhance a sentence within the appropriate range, the state must establish that the emotional injuries and psychological scarring are "particularly great." Tenn. Code Ann. § 40-35-114(6). See State v. Lorenzo Puente Salazar, Shelby County No. 02-C-01-9105-CR-00098 (Tenn. Crim. App., Jackson, January 15, 1992); Sterna, Davidson County No. 01-C-01-9007-CR-00163 (Tenn. Crim. App., Nashville, July 24, 1991).

In State v. Sterna, the accused was convicted of aggravated sexual battery. The trial court used enhancement factor (6), among other factors, to enhance the accused's sentence. The opinion does not set forth what "mental and physical injuries" the victim suffered at the hands of the accused. In holding that the trial court should not have used this factor to enhance the accused's sentence, this Court said:

> We agree with the finding that the mental and emotional injuries were particularly great. This is borne out by the child's subsequent conduct. However, there is no proof that the crimes will have a "lifelong, serious emotional impact upon the child." In the absence of expert testimony to that effect, that finding is inappropriate.

Sterna, Davidson County No. 01-C-01-9007-CR-00163 (Tenn. Crim. App., Nashville, July 24, 1991).

In State v. Salazar, this Court held that the trial court should not have used the enhancement factor in an aggravated rape case where the only evidence of injury was the testimony of the victim's mother who said the child had "continuing nightmares." The trial court concluded that the six-year-old child would suffer from "emotional and mental trauma." In holding that the trial court should not have used this enhancement factor to enhance the accused's sentence, this Court said:

> Clearly, rape is injurious per se to the body and mind of the victim. In this regard, the legislature has seen fit to enhance the offense to aggravated rape if a child is involved. In consideration of this automatic enhancement, it is questionable that a trial court is entitled to rely solely upon the age of the

> victim as a basis to find that the mental trauma is "particularly great." Further, the record is totally devoid of any evidence from which the trial court could determine that the mental disturbance shown in the record was greater than, less than, or equivalent to that which is ordinarily involved with this serious offense. Under such circumstances, the record does not support the trial court's findings that the mental trauma was "particularly great."

Salazar, Shelby County No. 02-C-01-9105-CR-00098 (Tenn. Crim. App., Jackson, January 15, 1992).

The Tennessee Supreme Court in State v. Kissinger, 922 S.W.2d 482, 487-88 (Tenn. 1996), looked for medical or psychological proof to determine if the victim's injuries were "particularly great." Finding none, the court determined that application of factor (6) was inappropriate.

In this case as to the victim D.D.N., the state provided ample proof of the child's injuries. A therapist and psychologist testified about the effect the sexual abuse had on the child. The therapist said that D.D.N.'s lashing out and self-injurious behavior occurred after the child met the defendant. D.D.N.'s psychologist testified that unresolved issues involving trust, intimacy, and relationships will arise throughout his life. Continuing therapy is needed to resolve the damage. See State v. McKnight, 900 S.W.2d 36, 54 (Tenn. Crim. App. 1994), per. app. denied (Tenn. 1995) (approving a trial court's finding that victims who required counseling suffered "particularly great" emotional injuries).

As to victims R.A.V. and J.T.K., there was no expert or medical testimony to establish that their injuries were "particularly great." Thus, as to counts I through VI, the enhancement factor was proper. As to the remaining three counts, the use of the enhancement factor was improper.

**(2)**

As to the use of factor (7) that the offense was committed to gratify the defendant's desire for excitement or pleasure, the state concedes that this factor was applied inappropriately. A necessary element of aggravated sexual battery is sexual contact which is done for the purpose of sexual arousal or gratification. The offense of sexual battery or aggravated sexual battery includes the intent to gratify a desire for pleasure or excitement. Kissinger, 922 S.W.2d at 490.

21

**(3)**

The defendant made no objections to the trial court's use of factor (1) previous criminal behavior and factor (15) abuse of trust. These factors applied to all three victims.

**(4)**

An enhancing factor that the trial court failed to apply was factor (4) that the victim was particularly vulnerable because of age or mental disability. Tenn. Code Ann. § 40-35-114(4). The record indicates that the victim D.D.N. was learning disabled and was in fact enrolled in a school for children with learning disabilities. The record indicates that of the five victims, most of the instances of unlawful sexual contact occurred with victim D.D.N., who was around ten years old at the time of the contact. The unlawful activity occurred every time he went to the defendant's home which was usually every weekend. This Court has held that where a victim was learning disabled this enhancement factor is appropriate. State v Clabo, 905 S.W.2d 197, 206 (Tenn. Crim. App.), per app. denied (Tenn. 1995).

Thus, as to victim D.D.N. and counts I through VI enhancement factors (1), (4), (6) and (15) applied. As to victims, R.A.V., counts IX and X, and J.T.K. count XI, factors (1) and (15) applied. The finding that two of these factors are not applicable to counts IX, X, and XI does not justify a reduction in the sentences imposed in these counts.

**B.**

The defendant also argues the trial court erred by failing to apply mitigating factors including that his behavior neither caused nor threatened serious bodily injury under Tenn. Code Ann. § 40-35-113(1), and prior to his convictions he had been a productive citizen which should be considered a mitigating factor under Tenn. Code Ann. 40-35-113(13).

**(1)**

22

This Court has used the lack of serious bodily injury or the absence of that threat as a proper mitigating factor in aggravated sexual battery cases. State v. Hayes, 899 S.W.2d 175, 187 (Tenn. Crim. App.), per. app. denied (Tenn. 1995); State v. Robert Wilson, Blount County No. 03-C-01-9209-CR-00305 (Tenn. Crim. App., Knoxville, March 22, 1993). This Court has also declined to use this mitigating factor. Clabo, 905 S.W.2d at 207 (charges of aggravated sexual battery and aggravated rape); McKnight, 900 S.W.2d at 55 (refusing to apply mitigating factor when the defendant gave his victims alcohol and sexually abused them resulting in aggravated rape and aggravated sexual battery charges). In State v. Robert Wayne Seffens, a case involving aggravated rape and assault and battery of two young girls, this Court held that the threat of "serious bodily injury" was enough.

> While his conduct did not cause "serious bodily injury" as that term is defined in Tenn. Code Ann. § 39-11-106(a)(33), it certainly was threatened and could have occurred. As defined in that section of our code, "serious bodily injury" includes bodily injury involving extreme physical pain. Tenn. Code Ann. § 39-11-106(a)(33)(c). The possibility of extreme physical pain from the vaginal and anal penetration of a little child by a grown man is obvious.

Seffens, Davidson County No. 01-C-01-9107-CR-00190 (Tenn. Crim. App., Nashville, April 16, 1992).

Tennessee Code Annotated § 40-35-113(1) provides for mitigation if the conduct "neither cause[s] or threaten[s]" serious bodily injury. "Serious bodily injury" is defined as bodily injury which involves "a substantial risk of death," "protracted unconsciousness," "extreme physical pain," "protracted or obvious disfigurement," or "protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(33). The evidence supports the defendant's conduct caused or at the very least threatened serious bodily injury to victim D.D.N. Despite the fact that D.D.N. had learning disabilities, his teacher and experts, testified that his behavior worsened as a result of his encounter with the defendant. D.D.N. became violent, self-destructive and was a danger to himself. The day he informed his teacher of abuse, he then climbed to the roof of the school building and threatened to jump. He had also perched at the top of an open stairwell at the school and leaned over the edge; his teacher said he stacked chairs on tables and stood on top of the chairs. Use of the first mitigating

factor was not appropriate for the charges pertaining to victim D.D.N. Use of that factor was appropriate for victims R.A.V. and J.T.K. because there was no evidence of serious bodily injury or threat.

**(2)**

The trial court was correct in refusing to consider as a mitigating factor the defendant's status as a "productive citizen." The evidence indicates quite the contrary. The defendant testified he wrote bad checks totaling $4,200. He wrote checks to the landlord of a building in Manchester, Tennessee which housed a garment factory in which Wells had ownership interest. He wrote bad checks to employees of the company and he wrote a bad check to a garment supply company. Prior to moving to Tennessee, in Florida in the mid-1980s, Wells lost his real estate broker's license for misappropriating client funds. After the allegations of sexual abuse arose, Wells left Tennessee and moved to Austin, Texas under a different name, Duane Andrew Wells. He also said he used a false social security number. Wells said he was trying to avoid his ex-wife who was attempting to execute a $37,000 judgment against him. Wells said he did not feel she was due the money despite her valid judgment. The evidence shows that Wells was anything but a productive citizen.

**C.**

The defendant also argues the court erred in making the ten (10) year sentences consecutive. Based upon Tenn. Code Ann. § 40-35-115(b)(5) the trial court made the defendant's sentences consecutive. This section provides:

> (b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:
>
> * * * *
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim, or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

24

The trial court summarized the defendant's conduct:

> What we have here or my characterization of it would be that apparently historically, Mr. Wells' crimes were crimes of fraud in the property realm, and in this instance, this is a fraudulent scheme, but unfortunately, it is in the personal crime category. There was no spontaneity or impulsive sexual misconduct here. This was a very elaborate, very calculated scheme on the defendant's part involving sustained intent. There was a careful building of trust beginning with one child, as I recollect it and understand it, and then once that child was hooked, so to speak, with all the fun activities and the things that were purchased and that type of thing, and just the camaraderie, then that child was used as bait to lure in other children who needed that kind or wanted that kind of fun and adult companionship, and even the parents, who as single, working, overwhelmed parents maybe needed some help from other adults, they actually ended up being victimized in the scheme, so I find that factor number seven is clearly applicable in this case.

The defendant was convicted of nine counts of aggravated sexual battery. The victims were ages ten and eleven when the acts occurred. The evidence showed the acts occurred in 1990 and 1991. On April 22, 1991 victim D.D.N. told authorities about the abuse and the defendant's scheme was uncovered. The defendant lured these boys to his home with games, trips, gifts, and "fun" activities. Being from single-parent homes or homes lacking a strong relationship with a father figure, these boys were hungry for the attention given by the defendant. Once these boys were regular visitors to the defendant's home, the defendant made sexual advances upon the boys. The relationships were cultivated over a period of time. When asked why the victims continued to go to the defendant's home after the incidents, the boys said the other youngsters were still going. Some said they were confused at the time as to the appropriateness of the defendant's actions. The evidence clearly indicated that victim D.D.N. sustained residual emotional damage from this abuse. As to the other two victims, R.A.V. and J.T.K., the evidence is not as certain. R.A.V.'s mother testified that her son was still having emotional problems. She said she sent him to live with other relatives believing that would take the place of "counseling." She testified at the sentencing hearing she had since realized that foregoing counseling was not a good idea. Her son continued to have problems, including an arrest at the time of trial for shooting a BB gun at cars.

Given the facts of this case, consecutive sentencing was appropriate. A lengthy

sentence is required to prevent the defendant from sexually abusing other young boys.


_____
                    JOE B. JONES, PRESIDING JUDGE



CONCUR:



_____
            JOHN H. PEAY, JUDGE



_____
            DAVID G. HAYES, JUDGE