IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 21, 2002 Session

## STATE OF TENNESSEE v. BOBBY SHELLHOUSE, JR.

**Direct Appeal from the Circuit Court for Sevier County**
**No. 7887     Rex Henry Ogle, Judge**

**No. E2001-01604-CCA-R3-CD**
**October 3, 2002**

The defendant contests his conviction and sentence for aggravated sexual battery. We conclude the evidence was sufficient to support the conviction, the seven-year-old victim was competent to testify, venue was properly established, proper chain of custody for the DNA evidence was established, and the amendment of the indictment was proper. Accordingly, we affirm the defendant's conviction. A review of the defendant's sentence reveals the trial court misapplied enhancing factor (8). There being two enhancing factors and one mitigating factor applicable to the defendant's sentence, the judgment is modified from the maximum of twelve years to eleven years.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Edward C. Miller, District Public Defender, and Susanne Bales, Assistant Public Defender, for the appellant, Bobby Shellhouse, Jr.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and Steven R. Hawkins, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Bobby Shellhouse, Jr., was indicted on one count of aggravated sexual battery. The original indictment alleged the date of offense as August 28, 1998. Upon motion of the State, prior to jury selection, an amendment was allowed to allege the date of offense as August 22-23, 1998. The defendant was found guilty by a jury of the charged offense, a Class B Felony, Tenn. Code Ann. 39-13-504 (1997). At the sentencing hearing, the defendant was sentenced to the maximum sentence of twelve years. The defendant is here challenging his conviction and length of

his sentence. The defendant raises the following issues: sufficiency of evidence, competency of the victim witness to testify, venue, chain of custody as relates to the DNA evidence introduced, and the amended indictment. He further challenges the maximum sentence imposed.

## **Factual Background**

We ascertain the following facts in the light most favorable to the State as the prevailing party. A. R., the victim, was four years old on the date of the offense.[1] She resided with her parents and a younger brother. The defendant, his wife Darlene, and their infant child resided next door to the victim's family. All parties lived on Ruby Mays Road in the vicinity of Strawberry Plains. (The map entered as an exhibit identifies the street as "Ruby Maes Way." For consistency, we will use Ruby Mays Road as it appears in the transcript.)

On the night of August 22, 1998, the victim's mother left her children in the custody of the defendant and Darlene Shellhouse in order to drive to Pigeon Forge and pick up her husband at his place of employment. The victim's parents returned late that night. Their trailer home was unoccupied, and they retired without waking the Shellhouse family.

On August 23rd, A. R. told her mother that the night before, the defendant had licked her panties in the "private" area and rubbed his clothed male member against her groin. This occurred at the victim's family's residence when only the defendant, the victim, the victim's brother, and the Shellhouse infant were present. The victim's mother reported the incident, and Detective Jerry McCarter from the Sevier County Sheriff's Department responded. After questioning the victim and her mother, McCarter took two pairs of the victim's panties as evidence, one of which was worn by her on the date of the offense. The panties were placed in evidence bags and submitted to the TBI crime lab in Knoxville with a request for an examination for the presence of saliva or semen.

In November of 1998, McCarter received a report from the Knoxville TBI that saliva was found on one pair of the victim's panties. The defendant, upon request, voluntarily submitted to a blood sample. This sample and the victim's blood sample were submitted to the Knoxville laboratory. Subsequent DNA analysis at the Nashville lab showed the saliva on the panties worn by the victim on the date of the offense to be that of the defendant.

## **Analysis**

### I. Sufficiency of Evidence

The defendant, in his first issue, challenges the sufficiency of the evidence to support his conviction for aggravated sexual battery. When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R.

---

[1] It is the Criminal Court of Appeals' policy to use juvenile victims' initials in lieu of their proper names.

App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. Id. In State v. Grace, the Tennessee Supreme Court stated, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

The defendant contends there is no proof that the touching was for the purpose of sexual gratification. The evidence is overwhelming that the defendant licked the victim's underwear covering her crotch area. Intent can rarely be shown by direct proof and must necessarily be shown by circumstantial evidence. Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973). "Sexual contact" is defined in Tennessee Code Annotated section 39-13-501(6) as including the "intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]" A person "acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective to desire to engage in the conduct or cause the result." Tenn. Code. Ann. § 39-11-302(a) (1997).

In this case there was direct proof of the defendant's actions, and the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the touching was intentional and for the purpose of sexual arousal or gratification. We decline the opportunity to characterize the defendant's conduct as "nuzzling" or a "snoopy kiss," as suggested by the defendant. Therefore, we conclude the evidence adduced was sufficient to support the conviction.

**II. Witness Competency**

Next, the defendant contests the finding by the trial court that the victim was competent to testify. At the time of her testimony, the victim was seven years old. At the competency hearing, the victim was questioned by both the court and the respective attorneys and duly qualified as competent.

The victim demonstrated an understanding of the difference between "truth" and "lies" and the consequences of the latter. Rule 601 of the Tennessee Rules of Evidence provides that "every person is presumed competent to be a witness." No one is automatically prohibited from testifying because of age or mental status. State v. Caughron, 855 S.W.2d 526, 537-38 (Tenn. 1993). "So long as a witness is of sufficient capacity to understand the obligation of an oath or affirmation, and some rule or statute does not provide otherwise, the witness is competent." Id. at 538. To understand the obligations of an oath, the witness must simply be aware of and sensitive to the obligation to tell the truth under oath. See State v. Jackson, 52 S.W.3d 661, 667 (Tenn. Crim. App. 2001). The question of competency is a matter left to the discretion of the trial court. Caughron, 855 S.W.2d at 538. The trial court's determination on competency will not be overturned absent a showing of an abuse of discretion. State v. Howard, 926 S.W.2d 579, 584 (Tenn. Crim. App. 1996).

It has not been demonstrated that the trial court abused its discretion in finding the victim competent. To the contrary, the young victim testified capably and apparently convincingly. Therefore, this issue lacks merit.

## III. Venue

The defendant next alleges that the State failed to prove venue in Sevier County by a preponderance of the evidence. An accused is entitled to a trial in the county where the offense was committed. State v. Marbury, 908 S.W.2d 405, 407 (Tenn. Crim. App. 1995); State v. Bloodsaw, 746 S.W.2d 722, 723 (Tenn. Crim. App. 1987). The burden is on the State to prove that the offense was committed in the county specified in the indictment. Marbury, 908 S.W.2d at 407; Bloodsaw, 746 S.W.2d at 724. Tennessee Code Annotated section 39-11-201(e) provides that the State must prove venue "by a preponderance of the evidence."

Venue is not an element of the offense which must be proved beyond a reasonable doubt; it is a jurisdictional fact which must be proved by a preponderance of the evidence. State v. Hutcherson, 790 S.W.2d 532, 533, 535 (Tenn. 1990); State v. Smith, 926 S.W.2d 267, 269 (Tenn. Crim. App. 1995); see Tenn. Code Ann. § 39-11-201(e). Venue may be shown by either direct or circumstantial evidence. See Hutcherson, 790 S.W.2d at 533; Smith, 926 S.W.2d at 269. A jury is entitled to draw a reasonable inference from proven facts as to the issue of venue. State v. Reed, 845 S.W.2d 234, 238 (Tenn. Crim. App. 1992).

The only support for the defendant's contention comes through the testimony of the victim's mother. Her testimony in this regard was, "We're considered Knox County, but we're all broken up. Everybody's on the border."

Through Detective McCarter, an "Official Sevier County Road Map" was introduced as an exhibit. Ruby Mays Road is the street of residence for the victim and the defendant and is shown to be within the bounds of Sevier County. The defendant himself testified unequivocally that the area where he and the victim's family lived is in Sevier County.

The State proved by a preponderance of the evidence that venue was properly in Sevier County. This issue is without merit.

## IV. Chain of Custody

The defendant's fourth issue on appeal concerns alleged failure of the State to prove proper chain of custody of the evidence, specifically the DNA evidence. The defendant alleges that there was lack of proof as to the method of delivery of the evidence between the Knoxville and the Nashville TBI labs and a failure to present testimony of the receiving personnel in both locations. Additionally, the defendant complains of a mistake in numerical identification on the blood sample of the defendant as it appears on the DNA analyst's report.

The chronology of the chain of custody was adduced at trial by three witnesses: Detective McCarter of Sevier County, Special Agent Dave Ferguson from the TBI crime lab in Knoxville, and Special Agent Constance Howard from the TBI crime lab in Nashville.

McCarter personally delivered the panties to the Knoxville lab on August 27, 1998. They were in a sealed evidence bag with McCarter's initials on the tape sealing the bag. A technician, Doris Stallings', whose initials "DJS" appear on the bag, received the sealed bag from McCarter and assigned it a laboratory number. Ferguson stated the procedure followed at the Knoxville lab was that the receiving technician places the evidence in a vault where it remains until an examiner requests it.

Ferguson testified that the evidence was received by him on November 9, 1998. He also testified that while the examiner is processing the evidence, it remains at the work station or is stored in a lockable storage area where access is limited to the examiner. Upon completion of examination, the evidence is returned to the vault.

Subsequently, on differing dates, McCarter delivered blood samples of the defendant and the victim to the Knoxville lab. The same procedures as previously stated were followed, except that blood is stored in a lockable refrigerator for preservation purposes until swatches can be made. The panties and respective blood swatches were "forwarded" in individual sealed evidence bags to the Nashville TBI lab. Each item had a unique assigned number.

Special Agent Constance Howard is an employee of the TBI crime lab in Nashville and was qualified by the trial court as an expert in DNA analysis. She testified that evidence must be in a sealed condition to be admitted in the Nashville laboratory. It can arrive either by mail or hand delivery. The method of transporting the evidence herein was not addressed. However, all items

were received by an evidence technician, John Wicker, at the Nashville lab. His initials and date appear on all respective evidence bags.

The blood swatch of the defendant's was labeled as exhibit number 80051293. However, Howard, in her report, typed in the number as 80031293. She explained on redirect examination that the typographical error would not change the DNA results, and no other blood from the defendant was examined. All evidence in this case has a TBI case number (98206596) which appears consistently on each item of evidence.

In order to admit physical evidence, the party offering the evidence must either introduce a witness who is able to identify the evidence or must establish an unbroken chain of custody. State v. Holbrooks, 983 S.W.2d 697, 700 (Tenn. Crim. App. 1998). Whether the required chain of custody has been sufficiently established to justify the admission of evidence is a matter committed to the sound discretion of the trial court, and the court's determination will not be overturned in the absence of a clearly mistaken exercise of that discretion. Id. at 701. The identity of tangible evidence need not be proven beyond all possibility of doubt, and all possibility of tampering need not be excluded. State v. Scott, 33 S.W.3d 746, 760 (Tenn. 2000). The circumstances must establish a reasonable assurance of the identity of the evidence. State v. Kilburn, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989). The requirement that a party establish a chain of custody before introducing such evidence is "'to demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence.'" Scott, 33 S.W.3d at 760 (quoting State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)). It is in the sound discretion of the trial court to determine whether the chain of custody requirement has been satisfied, and the trial court's determination will not be overturned in the absence of a clearly mistaken exercise of that discretion. State v. Kilpatrick, 52 S.W.3d 81, 87 (Tenn. Crim. App. 2000); State v. Holbrooks, 983 S.W.2d 697, 701 (Tenn. Crim. App. 1998).

The defendant contends that the typographical mistake in the exhibit number on Agent Howard's report requires a heightened burden on the State to scrupulously establish chain of custody. The defendant relies heavily upon State v. Scott, 33 S.W.3d 746 (Tenn. 2000), for this contention. The court in Scott admonished the trial court that in the event of retrial, "The state must establish a proper chain of custody." Id. at 761. We do not interpret Scott to say that every link or individual in the chain of custody must necessarily testify. The court therein observed that evidence may be admitted when the circumstances surrounding the evidence reasonably establish the identity and integrity of the evidence and its criteria. Id. at 760 (citing State v. Holloman, 835 S.W.2d at 46, 46 (Tenn. Crim. App. 1992)).

The missing link in Scott involved more than a functionary duty. It concerned a lapse of explaining how or by whom two victims' hairs were mounted on microscope slides. This hiatus of evidence raised legitimate concerns as to both integrity and identification, the very reasons for establishing proper chain of custody. There are no such concerns under the instant facts. The swatch made from the defendant's blood sample is correctly labeled. The only mistake, typographical in nature, appears in the reference on the DNA analyst's report.

In the TBI labs, both in Knoxville and Nashville, the evidence must be sealed for acceptance and is received by evidence technicians who initial the evidence bag and store it internally in vaults until retrieved by an examiner. The total circumstances establish a reasonable assurance of the identity and integrity of the evidence. We decline to overturn the trial court's ruling as to admissibility on chain of custody.

## V. Propriety of Amended Indictment

The defendant next alleges that the trial court erred in allowing the State to amend the indictment on the day of trial.

Prior to commencement of jury selection, the State moved to amend the indictment as to date of occurrence from August 28th, 1998, to August 22nd and 23rd, 1998. Amendment was allowed over the defendant's objection.

The State objects to appellate review of this issue due to the defendant's failure to make appropriate references to the record in violation of Rule 10(b), Rules of the Court of Criminal Appeals. While this is accurate, we will nevertheless give the issue judicial review as deserved.

The pertinent provisions of Rule 7(b) Tennessee Rules of Criminal Procedure are as follows:
(b) Amendments of Indictments, Presentments and Informations. An indictment, presentment or information may be amended in all cases with the consent of the defendant. If no additional or different offense is thereby charged and no substantial rights of the defendant are thereby prejudiced, the court may permit an amendment without the defendant's consent before jeopardy attaches.

The date in the indictment may be amended pursuant to this rule. See State v. Marlow, 665 S.W.2d 410, 413 (Tenn. Crim. App. 1983); State v. Sexton, 656 S.W.2d 898, 900 (Tenn. Crim. App. 1983). Amendment of the date in an indictment does not allege a different or additional crime when done to allow the original charge to stand. State v. Kennedy, 10 S.W.3d 280, 284 (Tenn. Crim. App. 1999). The trial court has the discretion to allow amendment of the date, id., and the reviewing court will not alter such a ruling in the absence of abuse of discretion. State v. Kirkland, 696 S.W.2d 544, 545 (Tenn. Crim. App. 1985).

In this case, the defendant testified that the victim was in his care on the amended dates. No proffer of alibi testimony was made as to the date originally in the indictment. The defendant, if surprised, made no motion for continuance. In addition, the amended dates of offense were contained in the State's discovery documents. Amendment of the date on the indictment was properly allowed. This issue is without merit.

## VI. Sentence

Finally, the defendant contends that the trial court erred in imposing the maximum sentence of twelve years for aggravated sexual battery. This Court's review of the sentence imposed by the

trial court is de novo with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is de novo. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Comm'n Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

If no mitigating or enhancement factors for sentencing are present, Tennessee Code Annotated section 40-35-210(c) provides that the presumptive sentence for most offenses shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e); State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Kelley, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000); see Tenn. Code Ann. § 40-35-210 Sentencing Comm'n Comments. Nevertheless, should there be no mitigating factors but enhancement factors are present, a trial court may set the sentence above the minimum within the range. Tenn. Code Ann. § 40-35-210(d); Lavender, 967 S.W.2d at 806; Manning v. State, 883 S.W.2d 635, 638 (Tenn. Crim. App. 1994).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

The State concedes that the trial court erred in applying enhancement factor (8) of Tennessee Code Annotated section 40-35-114. This enhancing factor is, "The defendant has a previous history

of unwillingness to comply with the conditions of a sentence involving release in the community." The defendant, at the time of this offense, was on probation for a misdemeanor casual exchange conviction. The commission of the offense for which the defendant is being sentenced does not make factor (8) applicable because there must be a *previous* history of unwillingness to comply. State v. Adams, 45 S.W.3d 46, 60 (Tenn. Crim. App. 2000); State v. Hayes, 899 S.W.2d 175, 185-86 (Tenn. Crim. App. 1995). This enhancement factor was misapplied and, therefore, the presumption of correctness falls and our review is de novo. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The trial court found enhancement factor (1), prior criminal history, applied and the defendant's brief concedes a prior shoplifting and possession of marijuana conviction. In further justification of the sentence, the trial court also stated as follows:

> So the Court gives great weight especially to the fact that he was on release status, on probation at the time this offense occurred and that he certainly did this while this child was in his custody and care and therefore violated a position of private trust on a little four-year-old girl.

> And so based upon that in all candor with you the enhancing factors far outweigh any mitigating factors. I think a twelve year sentence is justified.

The only mitigating factor advanced by the defendant and found applicable was Tennessee Code Annotated section 40-35-113(l): the defendant's criminal conduct neither caused nor threatened serious bodily injury. This was justifiably considered, but given little weight by the trial judge.

We are thus confronted with two enhancement factors, a prior criminal history and a breach of trust, which the defendant concedes are applicable. That recognized, we are bound to follow the general principles of sentencing embodied in the Criminal Sentencing Reform Act of 1989, Tennessee Code Annotated section 40-35-101, et. seq. Two relevant provisions are that the length of the sentence must be "justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(l) (1997), and "should be no greater than that deserved for the offense committed," Tennessee Code Annotated section 40-35-103(2) (1997).

There being two appropriate enhancement factors and one mitigating factor, the judgment is modified from the maximum sentence of twelve years to eleven years in the Tennessee Department of Correction.

_____
JOHN EVERETT WILLIAMS, JUDGE